## NANCY FITTS v. OLIVER H. FITTS.

*Quere*, Whether a marriage settlement which is not executed or acknowledged before a Notary, but is attested by two witnesses, is valid. (See Hart. Dig. Art. 2412.)

The trust deed, then, having binding force, there can be no objection to the substitution of a trustee, for (instead of) Moore, who had departed this life; but why he should have been also denominated or appointed as a receiver, is not so obvious. But if he be not required to discharge any duties, or be not invested with any powers, which might not have been imposed or conferred upon him in his capacity as trustee, there is no sufficient reason why the appointment should be revoked, especially when, as a condition precedent to the assumption of the office, he is required to give bond with sufficient sureties, and is also strictly and constantly under the supervision and control of the Court. Whether he be called receiver or trustee, is not very material.

See this case as to the necessity of a statement of facts, where there is a special

*verdict*, and the appellant objects not to the verdict, but to the decree rendered thereon.

There are cases in which, on divorce, the Court will take the property out of the possession of both husband and wife, and place it in the hands of a trustee, to be administered by him,—the proceeds to be applied, in proportions ordered by the Court, to the support of the husband, the wife and their children.

The Constitution of the State and the Law of 1848, on the subject of marital rights, produced no change in the rule of division, on divorce, and the Statute continues as it existed before the adoption of the Constitution.

The most obvious construction of the Statute (Hart. Dig. Art. 849) is, that (on divorce) the separate property should be restored to its owner respectively, and that such division of the community property be made, as may seem just and right; it being understood that a due regard must be had to the rights of the parties, that suitable provision must be made for the education and maintenance of the children, if any, and that although the community property, if any, is the *primary fund* from which such provision should be made as would render the division just under all the circumstances, yet there may be cases in which the separate property will be subjected to such charges—and especially in favor of the wife—as may be equitable and right : provided that the title to lands and slaves be not divested.

In this case, on a question as to marital rights in cases of divorce, the Court folfowed the adjudications of Courts where the Common Law prevailed, rendered upon Statutes similar to our Statute on divorce.

It seems that a decree for divorce, which takes separate property out of the possession of the owner, and places it in the hands of a trustee, to be controlled and managed by him,—the proceeds to be paid to the husband, wife and children in certain proportions, is not inconsistent with the Statute, (Hart. Dig. Art. 850,) which provides that neither party shall be compelled to divest himself or herself of the title to real estate or slaves.

Where there was no common property, and the only property which appeared had been the separate property of the husband, and had been conveyed by him for the benefit of his wife and children, and the wife obtained a divorce on the ground of cruel treatment, and the wife had alleged in her petition that the husband was dissolute and dissipated, and incapable of taking care of property, a decree was made, placing all the property in the hands of a trustee, or receiver, who was required to give bond and to manage the property, subject to the orders of the Court, and pay out the proceeds in equal proportions for the support of the husband, wife and children.

Since the repeal of the Mexican laws in 1840, the husband can make donations of property to the wife ; and such donations may be made directly, without the intervention of a trustee.

Error from Rusk.  The verdict of the jury commenced  " we, " the jury, find the allegations of plaintiff's petition, relative to " the divorce prayed for, to be true," and then continued, as stated in the Opinion.

*Henderson & Jones,* for plaintiff in error. It may be that the Court was right in decreeing a part of the use and profits of the negroes in dispute, the separate property of the plaintiff, for the support of the husband, and that this is no violation of the law which says that, on a decree of divorce, neither husband nor wife shall be compelled to divest him or herself of title to their separate property ; yet it is not so clear that the Court was right in taking the possession of the plaintiff's separate property away from her, and appointing a trustee for her against her will and consent. This exercise of the power of appointing a trustee, is certainly a step beyond any former precedent. Nevertheless, the plaintiff in error is willing to waive this and all other exceptions to the decree, and to abide by it so far as it extends ; but there is a matter in which the decree falls short ; and as to this we ask that the decree may be re-formed, and be made to carry out full relief and justice. The jury find, among other things, that the defendant had conveyed to the plaintiff two tracts of land, and some stock ; and the Court recites such finding in its decree ; nevertheless, the Court omits to decree these lands to the plaintiff. As to these lands, we ask that the decree of the Court may be corrected, and that they be decreed to the plaintiff ; and as the defendant has been provided for out of the profits of the slaves, sufficiently, in the judgment of the Court below, and as the conveyance was to the plaintiff solely and absolutely, we ask that the property be decreed to the plaintiff free from any further charge.

*Armstrong* and *Parsons,* for defendant in error.

HEMPHILL, CH. J. This was a suit, by the wife, Nancy Fitts, for divorce, on the ground of cruelty. There having been no appeal by the defendant, from the judgment for divorce, the decree will not in this particular be reversed ; the errors, if any, being such as are not apparent on the record. But, the plaintiff insisting that she has been aggrieved by the disposition that has been made of the property, we will examine her grounds of complaint.

She alleged in her petition, that she was entitled to two tracts of land, certain negroes named, some cattle, and a yoke of oxen, which, by deed of gift from her husband, had been conveyed to her subsequent to their marriage, and a copy of the deed was filed as an exhibit. This was drawn very unskillfully. It states the consideration to be the natural love and affection which the husband bore to his beloved wife, and children already begotton by his wife, and to be begotten by them; and the further consideration of one dollar; and it gives the property to his wife and her lawful heirs by him, and after her death the property to go to the lawful heirs, &c.

By various amendments, it was averred that the defendant, previous to their intermarriage, had, by deed, conveyed these slaves to John Moore, the father of the wife, for her use and benefit; and that of the heirs of her body begotton by this marriage; that the said deed was, after its execution and delivery, deposited in the office of the County Clerk, to be recorded; and that the defendant, after the marriage, unlawfully and fraudulently, without consent of the plaintiff, or of John Moore, the trustee, took the said deed of trust from the said office, and destroyed or suppressed the same; that the defendant is dissolute and dissipated, incapable of managing or taking care of property, and the plaintiff feared that if he should obtain control of said slaves, they would be disposed of and their proceeds squandered, so as to be lost to plaintiff and her children; that he has already sold, and squandered the proceeds of the sale of five of the slaves, which had been included in the marriage settlement. She prayed for the appointment of a trustee, to carry out the trust of said deed, and for such relief as the nature of her case might require.

The jury found that there was a deed of trust, given by defendant to John Moore, for the benefit of plaintiff and her children, before the intermarriage of plaintiff and defendant; and they found the negroes, claimed in the petition, subject to said deed of trust; and they also found that a conveyance was

afterwards made by defendant to plaintiff, which included the slaves, oxen, cattle and two tracts of land, and that these originally belonged to the defendant. They also found that the deed of trust was attested by two witnesses, but was not acknowledged before a Notary Public, but was filed in the County Clerk's Office and taken out by defendant.

The Court, after reciting the substance of the trust deed, and setting forth fully the deed made after the marriage, appointed Samuel P. Darwell trustee in place of the deceased John Moore, investing him with the powers pertaining to the said Moore, and that the title to the said slaves be not divested, but that the net proceeds of their use be decreed as follows, viz: one-fifth to the husband during his natural life, one-fifth to the plaintiff during the life of the defendant, and three-fifths to their children; and it was further decreed, that the said Samuel P. Darwell be appointed special agent or receiver, distinct from his office as trustee; that as such he give bond to the parties in double the value of the slaves; and after stating the conditions of said bond, the mode of execution and approval, &c., it is further decreed, that the said receiver take charge of the property, and manage it for the best interest of the parties concerned; that on the death of Oliver Fitts, the defendant, the office of receiver shall cease, and the property revert to and be controlled by the trust deed; that such receiver be under the supervision of the Court, and orders may, from time to time, be made, to carry into effect the objects of the decree; and that the receiver so arrange the affairs of said trust, as to pay the portion due the husband at the beginning of each year, and that the same be raised of a portion of said slaves, or otherwise, as may be most expedient.

No provision was made in relation to the two tracts of land; nor was it declared to whom they belonged, or in whom they should vest.

There were various errors assigned by the plaintiff, but the objections to the decree, as urged in argument, are principally, 1st. To the appointment of a receiver, and subjecting the sepa-

rate property of the wife to the support of the husband, whose misconduct was the cause of the divorce. 2nd. That the lands were not decreed to be the property of the plaintiff, free from any charge or incumbrance.

In relation to the first, no objection has been urged, that the trust deed was not valid in law, the same not having been executed or acknowledged before a Notary Public. It was considered, perhaps, that though this may have been an objection, originally, to the deed, yet that it was either not fatal, or that if so, its effect was obviated by the subsequent acts of the defendant, in attempting its suppression, and by the execution of the deed of the like purport, and with similar trusts, posterior to the marriage. The trust deed, then, having binding force, there can be no objection to the substitution of a trustee, for Moore, who had departed this life; but why he should have been also denominated or appointed as a receiver, is not so obvious. But if he be not required to discharge any duties, or be not invested with any powers, which might not have been imposed or conferred upon him in his capacity as trustee, there is no sufficient reason why the appointment should be revoked, especially when, as a condition precedent to the assumption of the office, he is required to give bond with sufficient sureties, and is also strictly and constantly under the supervision and control of the Court. Whether he be called receiver or trustee, is not very material.

The main point for consideration is, whether the Court had competent authority to dispose of the property, as provided for in the decree, and place it under the active and immediate control of the trustee, subjecting a portion of its proceeds to the support of the husband. There is no copy of the trust deed in the record, and there was none, it is presumed, before the Court below. Its exact provisions are not known, and its trusts are not described with much accuracy or precision. Whether the conveyance was for the use of the wife, during her natural life, and for the children of the marriage after her death, or for their use jointly, does not distinctly appear; and

the Court might therefore use some discretion in declaring or establishing its trusts, so as, however, not to defeat the main object, which was a provision for the wife and their children.

If the deed were to be regarded as a provision for the wife and children, jointly, then there would be more reason why the property should be under the immediate control of the trustee, especially as a second marriage may be contracted by the wife. There is no statement of facts, and we are not apprised of the grounds upon which the Court acted in making up the decree. As a general rule, it is not the intention of trust deeds, nor is it the usage under them, for the property to go into the possession, or remain under the active control, of the trustee. Under marriage settlements, the property generally remains with the wife, or the husband and wife jointly, according to the nature and character of the limitations. There may be circumstances which would require possession and control by the trustee. What these were in this case, we have not the means of ascertaining. Possibly one of the reasons may have been to secure the payment of the provision for the husband, and this leads to the enquiry as to the authority of the Court to decree such provision. The objection to the power is, that the slaves having become the separate property of the wife, this incumbrance on them or their proceeds, contravenes the provision which inhibits either party from being divested, on divorce, of their title to real estate or slaves. The Statute (Hart. Dig. Art. 849) authorizes, on divorce, a division of the estate of the parties, in such way as to the Court shall seem just and right, having due regard to the rights of each party, and their children, if they have any; provided that nothing in the Statute contained, shall be construed to compel either party to divest him or herself of the title to real estate or slaves.

At the passage of the law on divorce, the marital rights Act of 1840 was in force, by which land and slaves only constituted separate property, in marriage—all other property being common. Previous to the Act of 1840, and subsequent to the Constitution and the Law of 1848, the separate property of the

partners in matrimony was not restricted to lands and slaves, but embraced, and does now embrace, all property held before marriage, or subsequently acquired by gift, devise or descent. But these modifications of the right of property, in matrimony, produced no change in the rule of division, on divorce, and the Statute continues as it existed before the adoption of the Constitution. As the parties in marriage, in this State, very often have each separate property, and as very generally there is some community property, the most obvious construction of the Statute is, that the separate property should be restored to its owner respectively, and that such division of the community property be made, as may seem just and right; it being understood that a due regard must be had to the rights of the parties, that suitable provision must be made for the education and maintenance of the children, if any, and that although the community property is the primary fund from which such provision should be made as would render the division just under all the circumstances, yet there may be cases in which the separate property will be subjected to such charges, and especially in favor of a wife, as may be equitable and right: provided that the title to lands and slaves be not divested.

The provision of the Statute regulating the division, on divorce, is not peculiar to the laws of this State. A similar provision is found among the Statutes of some of the other States. It is identical with that of Alabama, with the exception that the clause against divestiture, in the Alabama Statute, extends only to real estate, whereas in our Statute it extends also to slaves. The law of Kentucky is not dissimilar to that of Alabama, except that the Court is directed to divide the estate, real and personal; saving the title however of both parties to their real estate.

We may, with propriety, examine the construction which has been placed on this provision by the Courts of those States, although the condition of marital property differs widely in those States, from its condition in this, there being no community property there as here; and most frequently the wife, in those

States, possessing little or no separate property, whereas, generally, the case is otherwise in this State. But, as the cause now under review is one in which there is no other but separate property, and that property consisting of lands and slaves, the title of which the Statute has declared shall not be divested, the decisions from other States, the only questions before them being how separate property shall be divided, and how real estate may be charged without divesting title, will have peculiar application and force. And from these decisions it appears, that even the guilty party, as is the defendant in this case, is entitled to (at least under certain circumstances) maintenance out of the property of the other.

The first case to which I shall refer, is Oliver v. Oliver, (5 Ala. R. 75,) in which no special reference is made to the Statute, but an opinion is expressed, on facts somewhat similar to those in this case, that, if carried into execution, would sustain not only the claim of defendant to support out of the property of the wife, but would require this to be conveyed to him as a condition precedent to the divorce. The suit, in the case cited, was (as in this) by the wife, and the husband had made a settlement on the wife and children by a former marriage. The Court said it might be proper for the Chancellor to refuse a divorce, until the wife should execute a re-conveyance of such separate estate.

In Lovett v. Lovett, 11 Ala. R. 763, (Bishop on Marriage and Divorce, Sec. 626,) the suit was by husband, for divorce, on the ground of the wife's desertion. The Court says that no construction can be put upon the Statute, which would authorize the Court, in any case, to do less than provide a maintenance for the wife, if the estate of the husband be sufficient for that purpose. She should be enabled, if her husband's estate were such as to justify it, to live in such a manner as that, if possible, she may regain her lost standing in society. The parties were aged, their children grown up and provided for, the property had been the joint accumulation of both, during cohabitation, and the wife having no separate property, though

her abandonment was the cause of divorce, an allowance was made to her, of the one-third of the personal estate absolutely, and the use of the one-third of the land for life ; and it was further held, that this grant to her, of the use of the real estate, did not divest the husband of the title, within the meaning of the Statute.

In Fishli v. Fishli, (2 Litt. 339,) divorce was decreed to the wife, on the ground of abandonment, and the provision of Statute, under which they disposed of the property, is expressed as follows : "The Court pronouncing the decree of divorce, shall "regulate and order the division of the estate, real and per-"sonal, in such way as to them shall seem just and right, hav-"ing due regard to each party, and the children, if any ; pro-"vided, however, that nothing herein contained shall be con-"strued to authorize the Court to compel either of the parties "to divest himself or herself of the title to real estate." This is somewhat variant from our Statute, in directing both real and personal estate to be divided, and requiring the Court to have due regard to each party, instead of to the rights of each party. The Court, in the case cited, regarded the subject of division as left very much, by the Statute, at the discretion of the Court; there being no children, and no alleviating circumstances in favor of the husband, the Court decreed to the wife one-half of the personality, and the use of one-third for life of the real estate.

In Pence v. Pence, (6 B. Monroe, 496,) the Court restored to the wife all the property she originally brought into the marriage, and gave her seven hundred and fifty dollars besides. In both of the foregoing cases, the wife was the innocent party ; but there are cases in which a portion has been given her, though guilty.

Under Statutes authorizing division of property, on divorce, the Courts, according to Bishop, in his treatise, (Sec. 624–25,) have not acted on any uniform rule. One proposition appears to be, to give to the wife, at least as much as she would have been entitled to on the death of her husband ; and this prin-

ciple he deems to be ordinarily applicable, subject to such exceptions as would meet the circumstances of particular cases. (4 Litt. 251 ; 5 Dana, 499 ; 7 Id. 181 ; Bishop, Sec. 603—612.)

I shall not attempt a critical examination of the terms of the Statute. Generally there would be no necessity for trenching on the separate property of either partner, for the benefit of the other. Both would often have separate property, and an equal division of the nett amount of the common property would, in the meaning of the Statute, be deemed just and right. But the case before us forms an exception to the general rule. But one of the parties has property—the husband having stripped himself of everything, and, moved by affection, having conveyed all for the benefit of his children, and of his wife who now seeks to expose him to utter destitution, incapable as he is, by her own showing, of making a support of any kind or degree. This would be the extreme of injustice. She derived all of her property from him. He could not have supposed, by his trust or other deed, that he was about to deprive himself of the use of the property. By law, he was entitled to the management of the separate property of his wife, and to a support out of its proceeds, having no means of his own. If there ever could arise a case in which the Court would depart from the ordinary rule of division, and under their power of doing what was just and right, make such provision as would meet the extraordinary circumstances of a particular case, this is one which strongly demands the interposition of the Court. Under the facts, we are of opinion that the provision for the husband was most equitable and just, and that to have refused him all means of sustenance, out of what had been his own property, would have been both cruel and iniquitous. And we deem the provision quite consistent with the Statute, and that it does not infringe the title of the slaves, according to the true intent and meaning of the Act. There was therefore no error in decreeing said provision for the benefit of defendant.

But there was error in not embracing the lands in the decree. I am not aware of any principle of law, which would invalidate

the gift of a husband to the wife.    Donations between husband
and wife were, it is believed, forbidden, with some exceptions,
under the Spanish Law, on the ground that from their mutual
affection they might improvidently convey away all their pro-
perty, and reduce themselves respectively to beggary and des-
titution.    This law would be found quite useful, if there were
many cases of the like character with the one before the Court.
And by Common Law, gifts by the husband to the wife were
void—she having no capacity to receive, being in contempla-
tion of law, but one with her husband.    But in this State, the
wife, with respect to property, is not one with the husband.
She has like capacity with him to acquire, receive and hold
property.    Even under the Common Law she could hold pro-
perty given or settled by the husband through the intervention
of a trustee.    There is no necessity for the interposition of a
trustee in this State.    The wife can hold fully and perfectly in
her own right, without the intervention of any one.    The
Court below having taken no action in relation to the lands,
the cause will be remanded, that suitable decree may be made,
vesting the property according to the limitations of the deed,
appropriating such portion of the proceeds of the lands, if there
be any, as may be necessary for the support of the defendant.
It is ordered, adjudged and decreed, that the judgment be af-
firmed, and it is further ordered that the Court do proceed to
make such order and decree in relation to the lands as will
secure the objects intended by the deed of conveyance, appro-
priating, if necessary, a portion of their proceeds to the sup-
port of the defendant, and it is further ordered that the costs
of this Court be paid *pro rata* out of the fund, in the mode di-
rected by the decree of the Court below, for the costs in the
District Court.

Ordered accordingly.